1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **CENTRAL DISTRICT OF CALIFORNIA**
10

11   REGINA MITCHELL-ST. JULIEN,    ) Case No. CV 10-9080-SP
12              Plaintiff,           )
                                     )
13          v.                       ) **MEMORANDUM OPINION AND**
                                     ) **ORDER**
14   MICHAEL J. ASTRUE,              )
15   Commissioner of Social Security )
     Administration,                 )
16                                   )
              Defendant.             )
17                                   )
                                     )
18   ─────────────────────────────
19                        **I.**
20                  **INTRODUCTION**
21          On December 1, 2010, plaintiff Regina Mitchell-St. Julien filed a complaint
22   against defendant Michael J. Astrue, seeking a review of a denial of Disability
23   Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  Both
24   plaintiff and defendant have consented to proceed for all purposes before the
25   assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c).  The parties' briefing is
26   now complete, and the court deems the matter suitable for adjudication without oral
27   argument.
28          A single issue is presented for decision here: whether the Administrative Law

Judge ("ALJ") properly considered the evidence of a medically determinable severe mental impairment. Joint Stipulation ("JS") at 5-14, 14-16, 17.

Having carefully studied, inter alia, the parties' Joint Stipulation and the Administrative Record ("AR"), the court concludes that, as detailed herein, there is substantial evidence in the record, taken as whole, to support the ALJ's decision. First, the ALJ properly determined that plaintiff does not suffer from a severe mental impairment. And second, the ALJ properly disregarded the treating physician's opinion regarding plaintiff's mental impairment, as such opinion was based on plaintiff's subjective complaints and not supported by the objective medical evidence. Therefore, the court affirms the Commissioner's decision denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was thirty-nine years old on the date of her February 8, 2007 administrative hearing, has a high school degree and some college education. *See* AR at 370, 373-74. Plaintiff has no past relevant work. *Id.* at 19, 408.

On September 26, 2005, plaintiff filed applications for DIB and SSI, alleging that she has been disabled since April 1, 1990 due to multiple sclerosis and fibromyalgia. *See* AR at 12, 42, 55-58. Plaintiff's applications were denied initially and upon reconsideration, after which she filed a request for a hearing. *Id.* at 12, 38, 39, 40, 42-46, 47, 49-54.

On February 8, 2007, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. AR at 372-83, 385. The ALJ also heard testimony from Alan E. Cummings, a vocational expert ("VE"). *Id.* at 383-84. On February 21, 2007, the ALJ denied plaintiff's request for benefits. *Id.* at 12-21.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff has not engaged in substantial gainful activity since July 7, 2005. AR at 15.

1    At step two, the ALJ found that plaintiff suffers from severe impairments
2    consisting of "headaches, ischemia and trace tricuspid regurgitation."  AR at 15
3    (emphasis omitted).
4    At step three, the ALJ determined the evidence does not demonstrate that
5    plaintiff's impairments, either individually or in combination, meet or medically
6    equal the severity of any listing set forth in 20 C.F.R. Part 404, Subpart P, Appendix
7    1.  AR at 15.
8    The ALJ then assessed plaintiff's residual functional capacity ("RFC")[1] and
9    determined that she can perform medium work with avoidance of heights and
10   moving machinery.  AR at 15.
11   The ALJ found, at step four, that plaintiff has no past relevant work.  AR at
12   19.
13   At step five, based upon plaintiff's vocational factors and RFC, the ALJ
14   found that "there are jobs that exist in significant numbers in the national economy
15   that [plaintiff] can perform."  AR at 19 (emphasis omitted).  Thus, the ALJ
16   concluded that plaintiff was not suffering from a disability as defined by the Social
17   Security Act.  *Id.* at 13, 20, 21.
18   Plaintiff filed a timely request for review of the ALJ's decision, which was
19   denied by the Appeals Council.  AR at 4-7, 137, 233-35.
20   Plaintiff then filed an action in this court, case number CV 08-4348-JTL,
21   seeking review of the Commissioner's decision denying her claim.  *See* AR at 397;
22   JS at 3.  The matter was remanded for further proceedings pursuant to a stipulation
23
24   _____
25   [1]   Residual functional capacity is what a claimant can still do despite existing
     exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155
26   n.5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the
     ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's
27   residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir.
28   2007).

1  between the parties under sentence four of 42 U.S.C. § 405(g) on January 23, 2009.
2  *Id.*

3       On March 9, 2010, a second hearing was held before the ALJ where plaintiff,
4  represented by counsel, appeared and testified.  AR at 769, 772-73, 775-82, 784.
5  Jeanine Metildi, a VE, also testified.  *Id.* at 782-84.  On May 15, 2010, the ALJ
6  again denied plaintiff's request for benefits.  *Id.* at 397-410.

7       Applying the five-step sequential evaluation process, the ALJ found, at step
8  one, that plaintiff has not engaged in substantial gainful activity since her alleged
9  onset date of disability.  AR at 400.

10       At step two, the ALJ found that plaintiff suffers from a severe impairment
11  consisting of "mild degenerative disc disease of the lumbar spine."  AR at 400
12  (emphasis omitted).

13       At step three, the ALJ determined the evidence does not demonstrate that
14  plaintiff's impairments, either individually or in combination, meet or medically
15  equal the severity of any listing set forth in 20 C.F.R. Part 404, Subpart P, Appendix
16  1.  AR at 400.

17       The ALJ then assessed plaintiff's RFC and determined that she can "lift and
18  carry 50 pounds occasionally and 25 pounds frequently, stand/walk 6 hours in an 8-
19  hour workday, sit 6 hours in an 8-hour workday, [but should avoid] heights and
20  moving machinery."  AR at 400-01 (emphasis omitted).

21       The ALJ found, at step four, that plaintiff has no past relevant work.  AR at
22  408.

23       At step five, based upon plaintiff's vocational factors and RFC, the ALJ
24  found that "there are jobs that exist in significant numbers in the national economy
25  that [plaintiff] can perform."  AR at 408 (emphasis omitted).  Thus, the ALJ
26  concluded that plaintiff was not suffering from a disability as defined by the Social
27  Security Act.  *Id.* at 398, 409, 410.

28       Plaintiff filed timely written exceptions to the ALJ's decision and requested

1   the Appeals Council take jurisdiction over the matter, which was denied by the
2   Appeals Council.  AR at 387-89, 390-92.  The ALJ's decision stands as the final
3   decision of the Commissioner.

4                                   **III.**

5                          **STANDARD OF REVIEW**

6        This court is empowered to review decisions by the Commissioner to deny
7   benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security
8   Administration must be upheld if they are free of legal error and supported by
9   substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001).
10  But if the court determines that the ALJ's findings are based on legal error or are
11  not supported by substantial evidence in the record, the court may reject the findings
12  and set aside the decision to deny benefits.  *Aukland v. Massanari*, 257 F.3d 1033,
13  1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

14       "Substantial evidence is more than a mere scintilla, but less than a
15  preponderance."  *Aukland*, 257 F.3d at 1035.  Substantial evidence is such "relevant
16  evidence which a reasonable person might accept as adequate to support a
17  conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276
18  F.3d at 459.  To determine whether substantial evidence supports the ALJ's finding,
19  the reviewing court must review the administrative record as a whole, "weighing
20  both the evidence that supports and the evidence that detracts from the ALJ's
21  conclusion."  *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be affirmed
22  simply by isolating a specific quantum of supporting evidence.'"  *Aukland*, 257 F.3d
23  at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  If the
24  evidence can reasonably support either affirming or reversing the ALJ's decision,
25  the reviewing court "'may not substitute its judgment for that of the ALJ.'"  *Id.*
26  (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).
27
28

1

**IV.**

2

<u>**DISCUSSION**</u>

3       Plaintiff contends the ALJ erred in concluding that she does not suffer from a

4   severe mental impairment.  *See* JS at 5-14.  Plaintiff cites to an April 21, 2009

5   Evaluation Form for Mental Disorders completed by treating physician Ted J.

6   Tokaji, M.D., which plaintiff asserts demonstrates "mild retardation in processing

7   and in the ability to maintain focus and attention."  *Id.* at 9, 13.  Plaintiff also argues

8   that the testimony of the VE further supports her contention that she is not capable

9   of performing even unskilled work due to her alleged severe mental impairment.  *Id.*

10  at 13.

11      The threshold inquiry at step two is whether or not a claimant is suffering

12  from a severe impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  "At

13  step two of the five-step sequential inquiry, the Commissioner determines whether

14  the claimant has a medically severe impairment or combination of impairments."

15  *Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citation omitted).

16  "Important here, at the step two inquiry, is the requirement that the ALJ must

17  consider the combined effect of all of the claimant's impairments on her ability to

18  function, without regard to whether each alone was sufficiently severe."  *Id.* at 1290

19  (citations omitted).  "An impairment or combination of impairments can be found

20  'not severe' only if the evidence establishes a slight abnormality that has 'no more

21  than a minimal effect on an individual[']s ability to work.'"[2]  *Id.* (citations omitted).

22  "[A]n ALJ may find that a claimant lacks a medically severe impairment or

23  combination of impairments only when his conclusion is 'clearly established by

24  medical evidence.'"  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting

25  _____

26      [2]  "'Basic work activities' are defined as including such capabilities as use of
    judgment; responding appropriately to supervision, co-workers and usual work
27  situations; and dealing with changes in a routine work setting."  *Edlund v.*

28  *Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) (internal citations omitted).

1    Social Security Ruling ("SSR") 85-28,[3/] 1985 WL 56856, at *3).

2        In evaluating medical opinions, Ninth Circuit case law and Social Security

3    regulations distinguish among the opinions of three types of physicians: (1) those

4    who treat the claimant (treating physicians); (2) those who examine but do not treat

5    the claimant (examining physicians); and (3) those who neither examine nor treat

6    the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th

7    Cir. 1996); *see also* 20 C.F.R. §§ 404.1527(d) (prescribing the respective weight to

8    be given the opinion of treating sources and examining sources), 416.927(d) (same).

9    "As a general rule, more weight should be given to the opinion of a treating source

10   than to the opinion of doctors who do not treat the claimant." *Lester*, 81 F.3d at

11   830; *accord Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1036 (9th Cir.

12   2003). This is so because a treating physician "is employed to cure and has a

13   greater opportunity to know and observe the patient as an individual." *Sprague v.*

14   *Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). "The opinion of an examining

15   physician is, in turn, entitled to greater weight than the opinion of a nonexamining

16   physician." *Lester*, 81 F.3d at 830.

17       Where the treating physician's "opinion is not contradicted by another doctor,

18   it may be rejected only for 'clear and convincing' reasons." *Benton*, 331 F.3d at

19   1036; *see also Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("While the

20   ALJ may disregard the opinion of a treating physician, whether or not controverted,

21   the ALJ may reject an *uncontroverted* opinion of a treating physician only for clear

22   and convincing reasons."). "Even if the treating doctor's opinion is contradicted by

23   _____

24       [3/]  "The Commissioner issues Social Security Rulings to clarify the Act's
     implementing regulations and the agency's policies. SSRs are binding on all
25   components of the SSA. SSRs do not have the force of law. However, because they
     represent the Commissioner's interpretation of the agency's regulations, we give
26   them some deference. We will not defer to SSRs if they are inconsistent with the
     statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir.
27   2001) (internal citations omitted).
28

1   another doctor, the [ALJ] may not reject this opinion without providing specific and

2   legitimate reasons supported by substantial evidence in the record." *Lester*, 81 F.3d

3   at 830 (internal quotation marks and citation omitted); *accord Reddick*, 157 F.3d at

4   725. The ALJ can meet the requisite specific and legitimate standard "by setting out

5   a detailed and thorough summary of the facts and conflicting clinical evidence,

6   stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881

7   F.2d 747, 751 (9th Cir. 1989) (internal quotation marks and citation omitted).

8          Having carefully reviewed the record and the parties' joint stipulation, the

9   court is persuaded that the ALJ properly rejected Dr. Tokaji's opinions provided in

10  the April 21, 2009 Evaluation Form for Mental Disorders. First, the ALJ properly

11  rejected Dr. Tokaji's opinions as not being supported by the objective medical

12  findings. *See Burkhart v. Bowen*, 856 F.2d 1335, 1339-40 (9th Cir. 1988) (ALJ

13  properly rejected treating physician's opinion which was unsupported by medical

14  findings, personal observations, or test reports); *Batson v. Comm'r*, 359 F.3d 1190,

15  1195 (9th Cir. 2004) (ALJ may discredit treating physician's opinions that are

16  conclusory, brief, and unsupported by the record as a whole, or by objective medical

17  findings). As noted by the ALJ, although Dr. Tokaji – in the April 21, 2009

18  Evaluation Form – described plaintiff as severely limited in her activities of daily

19  living, ability to maintain social functioning and ability to maintain concentration,

20  persistence and pace, subsequent treatment notes from Dr. Tokaji indicate that

21  plaintiff had significant improvement in her symptoms after treatment with

22  psychiatric medications. *See* AR at 407, 684-86. Objective findings in the record

23  also reflect only slight mental abnormalities. For instance, based on a complete

24  psychological evaluation, consultative examining psychologist Charlene K. Krieg,

25  Ph.D. found that plaintiff "did not evidence any disorder on mental status." *Id.* at

26  676; *see Magallanes*, 881 F.2d at 751 (examining physician's opinion may

27  constitute substantial evidence if the "nontreating physician relies on independent

28  clinical findings that differ from the findings of the treating physician" (internal

1  quotation marks and citation omitted)).

2      Plaintiff asserts that Dr. Krieg found that plaintiff has borderline Full Scale

3  Intelligence Quotient and mild mentally retarded Processing Speed, and that the

4  ALJ erred in finding this did not constitute a severe impairment.  JS at 11.

5  Although plaintiff accurately recites a portion of Dr. Krieg's findings, plaintiff

6  appears to ignore Dr. Krieg's ultimate opinion that considering plaintiff's "overall

7  presentation and performance, there is no impairment that would interfere with her

8  ability to complete a normal workday or workweek."  AR at 676.  Because

9  plaintiff's Full Scale Intelligence Quotient and Processing Speed have no more than

10 a minimal effect on plaintiff's ability to work, such mental impairment was properly

11 found not severe.  *See Smolen*, 80 F.3d at 1290.

12     Second, the ALJ properly rejected Dr. Tokaji's opinion as being "based solely

13 on [plaintiff's] subjective complaints without any verification through an objective

14 mental status examination or psychological testing."  AR at 407.  This is a specific

15 and legitimate reason for rejecting a treating physician's opinion.  *See Morgan v.*

16 *Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999) (treating or examining physician's

17 opinion based on the claimant's own complaints may be disregarded if the

18 claimant's complaints have been properly discounted); *Sandgathe v. Chater*, 108

19 F.3d 978, 980 (9th Cir. 1997) (per curiam) (ALJ may legitimately accord less

20 weight to, or reject, the opinion of a physician based on the self-reporting of an

21 unreliable claimant where that claimant's complaints have been properly

22 discounted).  For example, Dr. Tokaji's opinions in the Evaluation Form were based

23 on plaintiff's statements that:

24     1.    "'I'm very forgetful.  I [might] underst[an]d you now but a few minutes

25 later, I might forget all.'"  AR at 656.

26     2.    "'I never have had a clear mind.  My mind is . . . occupied with a

27 lot of stuff.  I wish there is a medicine that helps get rid of those things in my

28 mind.'"  *Id.*

1        3.     "'I can't focus.  There are a lot [of] things [o]n my mind.  I keep

2    forge[t]ting things [that] I had just placed or done.'"  *Id.* at 657.

3           Further, there is evidence of malingering.  *See Morgan*, 169 F.3d at 599, 602.

4    Dr. Krieg indicated in the Psychological Evaluation form that plaintiff "appeared to

5    be over-reporting psychopathology in an attempt to appear more disturbed than she

6    is in reality."  AR at 675.  Dr. Krieg also noted that most of the mental exam scores

7    are "tentative for malingering."  *Id.* at 675, 676.  The ALJ specifically noted that Dr.

8    Krieg expressed the belief plaintiff was malingering and exaggerating her

9    symptoms, but Dr. Tokaji did not have the opportunity to review the findings from

10    Dr. Krieg's testing that were suggestive of malingering.  *Id.* at 405, 407, 408.

11          Lastly, plaintiff argues that because she allegedly suffers from a severe

12    mental impairment and is easily distracted, and the VE testified "that even a

13    moderate degradation in [the ability to focus] would eradicate the ability to perform

14    any work," the court should find that plaintiff can not perform even unskilled work.

15    JS at 13.  Plaintiff's argument lacks merit because her premises are unsound.  In the

16    first place, plaintiff misstates the VE's testimony.  Notably, the VE's testimony was

17    in response to the following hypothetical:

18           If, if we assume the same individual, but is moderately distractible, by

19           moderate I mean it's significant, it's obvious to coworkers, supervisors

20           and peers that they're easily distracted from, from carrying on their

21           duties, and it affected their ability to sustain work activity on a chronic

22           basis.  Would such an individual be able to perform any of the work

23           that you've described here today on a consistent basis?

24    AR at 784.  As such, the VE actually testified that an individual who is

25    significantly – not moderately – easily distracted would be unable to perform the

26    jobs she described at the hearing.  *See id.*  In the second place, as discussed above,

27    the ALJ properly discounted Dr. Tokaji's opinion that plaintiff is easily distracted,

28    and found that plaintiff does not suffer from a severe mental impairment.

1   Therefore, plaintiff's contention that the court should find plaintiff not capable of

2   performing even unskilled work is without merit.

3                                        **V.**

4                                  **CONCLUSION**

5         IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING

6   the decision of the Commissioner denying benefits, and dismissing this action with

7   prejudice.

8

9   Dated: January 11, 2012

10                                          _____

11                                          SHERI PYM
                                            UNITED STATES MAGISTRATE JUDGE
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          11